DELILAH VINZON, Cal. Bar No. 222681
  dvinzon@ftc.gov
MATTHEW FINE, Cal. Bar No. 300808
  mfine@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA  90024
Tel:  (310) 824-4300; Fax: (310) 824-4380

Attorneys for Federal Trade Commission

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>1661, INC., dba GOAT, a corporation,<br><br>　　　　　Defendant. | Case No. 2:24-cv-10329<br><br>COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), for its Complaint alleges:

1. Plaintiff brings this action for Defendant's violations of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and the FTC's

Trade Regulation Rule Concerning the Sale of Mail, Internet, or Telephone Order Merchandise ("MITOR" or the "Rule"), 16 C.F.R. Part 435.  Defendant's violations relate to (i) failing to have a reasonable basis to expect that they would be able to ship merchandise within the timeframe required by the Rule; failing to offer consumers, clearly and conspicuously and without prior demand, an option to consent to a delay in shipment or to cancel an order and receive a prompt refund when Defendant 1661, Inc., also doing business as GOAT ("GOAT"), failed to ship properly completed orders for merchandise within the timeframe required by the Rule; and failing to deem an order cancelled and make a prompt refund as required by the Rule, and (ii) misrepresenting that purchases are protected in the event that a consumer receives a product that is incorrect, incomplete, or otherwise not as described in the listing on GOAT's website or app.  For these violations, Plaintiff seeks relief, including a permanent injunction, monetary relief, and other relief, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and MITOR.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), (c)(2), and (d), 1395(a), and 15 U.S.C. § 53(b).

## THE PARTIES

4. The FTC is an independent agency of the United States Government created by the FTC Act.  15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces MITOR, which requires mail, Internet, or telephone-based sellers (i) to have a reasonable basis for advertised shipment times, (ii) when sellers cannot meet promised shipment times or ship within 30 days, to provide buyers with the option to consent to a delay in shipment or to cancel an order and receive a prompt refund, and (iii) to deem an order cancelled and make a

prompt refund to buyers under certain circumstances.

5. GOAT is a Delaware corporation with its principal office or place of business at 3433 W. Exposition Place, Los Angeles, CA 90018.  GOAT transacts or has transacted business in this District and throughout the United States.  At all times relevant to this Complaint, acting alone or in concert with others, GOAT has advertised, marketed, solicited orders for, or sold merchandise to consumers throughout the United States.

## COMMERCE

6. At all times relevant to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S BUSINESS ACTIVITIES

7. GOAT is an e-commerce secondary marketplace that advertises, markets, solicits orders for, and sells sneakers and apparel to consumers throughout the United States and in other countries.

8. GOAT advertises, markets, solicits orders for, and sells merchandise over the Internet on the website www.goat.com and through its mobile apps.  GOAT also advertises, markets, and solicits orders for merchandise via e-mail and social media advertisements.

9. The cornerstone of GOAT's business is that it strives to be the most trusted marketplace for sneakers, apparel, and accessories.  GOAT advertises that products sold on its platform are verified prior to shipment to Buyers.  GOAT's website and app prominently display the phrases "Authenticity Assured" and "Buyer Protection Guaranteed," including in the purchase flow.

10. Consumers who want to list their new or used sneakers and apparel for sale on GOAT's website or mobile app ("Listers") register with GOAT to be approved as "GOAT Sellers" and open a GOAT account.  For their product listings, Listers provide a description of the product, size, color, condition of the product,

condition of the box (if applicable), and photos to depict the tag and an unobstructed 360-degree view of the product. Listers set the price of the product or can accept Buyers' offers to buy the product. GOAT claims to review the listing for accuracy, quality, and acceptability and activate the listings that meet GOAT requirements.

11. Consumers who want to purchase products through the GOAT website or app ("Buyers") may search for products and view listings. Buyers may find listings for the same style of product for different prices and in different conditions. Buyers may select a listing and offer a price for a product or choose to purchase a product at the listed price.

12. To purchase products, Buyers must register to open a GOAT account, which requires Buyers to provide their information, including delivery address. Buyers make payment when they submit their order. Buyers can pay via a variety of payment methods, including credit card, PayPal, or GOAT Credit in their account.

13. GOAT's standard return policy, e.g., for products that consumers decide they do not like or want, permits returns where both of the following conditions are met: (a) products must be new and not deemed "final sale" (e.g., used items, vintage items, or items GOAT permits Lister to send directly to Buyer) and (b) the return must be requested within three days of delivery of the product. If a return is permitted, GOAT does not provide a full refund. Rather, GOAT provides GOAT credit for the purchase price of the product, but GOAT does not refund the Buyer's original shipping costs and charges the Buyer for the return shipping cost.

**Order Processing and Shipping**

14. Once a Buyer submits an order for a product, the Lister has 24 hours to confirm the order. GOAT's stated policy is to cancel orders and issue refunds to the Buyer's original form of payment where the Lister has not confirmed an order within such time.

15. After the Lister confirms the order, the order is processed in accordance with the type of order: Ship to Verify, Instant (Standard), and Instant (Next Day). For

Ship to Verify ("STV") orders, once the Lister confirms the Buyer's order, the Lister can generate a shipping label and has 72 hours to ship the product to GOAT. Upon receipt of the product, GOAT conducts its verification process and then ships the product to the Buyer. GOAT then issues a payout to the Lister's account (excluding commission and fees retained by GOAT).

16. GOAT has made representations about the speed of its shipping in its solicitations, including on the GOAT website and app. For example, GOAT represents on its website and app that STV orders are typically delivered to buyers within 7-10 business days.

17. GOAT represents on its website and app that it completes the verification process for Instant (Standard) and Instant (Next Day) products prior to them being listed on the GOAT website or app, and that these products are ready to ship to Buyers. GOAT represents that Instant orders are automatically confirmed and do not require the Lister to confirm the order.

18. During the purchase flow for an Instant product, GOAT has included a pop-up notification that states: "Order by 11AM PT (Monday-Friday, excluding holidays) for same-day processing and shipping."

> Instant products are pre-verified and ready to ship directly from GOAT. Order by 11AM PT (Monday-Friday, excluding holidays) for same-day processing and shipping.
>
> Pricing includes priority processing of up to 8%, which prioritizes your order to get it to you faster.
>
> Ok

19.     Buyers pay a premium for the faster processing and shipping times for Instant orders.  GOAT charges $14.50 for Instant (Standard) orders and $25 for Instant (Next Day) orders, plus up to 8% for priority processing "which prioritizes your order to get it to you faster."

20.     GOAT has represented on its website that Instant (Standard) orders typically arrive within 3-5 or 4-6 business days and that Instant (Next Day) orders typically arrive within 1-2 business days (depending on the time of day the Buyer placed the order).  In addition, GOAT provides Buyer with a "Get it by" date in the purchase flow, which reflects a date 7 business days after an Instant (Standard) order and 2 business days after an Instant (Next Day) order.

21.     Despite GOAT's representations that Instant orders placed Monday through Friday before 11 am ("Weekday Morning" orders) would be processed and shipped the same day, GOAT's data reflects that only 63% of these orders shipped on the same day.[1]  In other words, GOAT shipped 37% of these orders later than it represented.  GOAT did not have a reasonable basis to expect that it would be able to ship Instant Weekday Morning orders on the same day.

22.     For Instant (Next Day) orders, for which consumers paid a $25 premium, regardless of what day or time the Buyer placed the order, GOAT shipped more than 16% of Instant (Next Day) orders on the second business day or later.  GOAT did not have a reasonable basis to expect that it would be able to ship Instant (Next Day) orders by the next business day.

23.     Numerous consumers throughout the United States have visited and purchased merchandise from GOAT's website and app.

24.     In numerous instances after consumers submitted orders for merchandise

---

[1] Estimated shipping times and other order-related information is based on a random sample of 1 million GOAT orders from July 2019 to August 2022.

on GOAT's website, GOAT has not physically placed ordered merchandise in the possession of a carrier in the time represented or, if no time was represented, within 30 days of the order.

25. In numerous instances when GOAT has not physically placed ordered merchandise in the possession of a carrier in the time represented or, if no time was represented, within 30 days of the order, GOAT has not offered the buyer, without prior demand, an option either to consent to a delay in the shipment or to cancel the order and receive a prompt refund.

26. In numerous instances when GOAT has not offered the buyer the option to cancel the order or consent to a delay in shipment, GOAT has not canceled the order and has not provided consumers with a prompt refund.

27. Numerous consumers have complained directly to GOAT about late shipping, including through GOAT's website, app, and email, and GOAT's or its executives' social media accounts. Many consumers have reported that it was difficult to get a response from GOAT. Many consumers have filed complaints against GOAT, including with the FTC and the Better Business Bureau.

28. At relevant times, including prior to October 2022, GOAT has not maintained records or documentary proof establishing its use of systems and procedures which assure compliance with the Rule in the ordinary course of business, including such systems and procedures to provide buyers offers and prompt refunds.

29. In October 2022, GOAT implemented new policies related to MITOR compliance.

**Buyer Protection Policy**

30. GOAT displays the phrases "Authenticity Assured" and "Buyer Protection Guaranteed" during the purchase flow for new, used, or final sale orders.

31. When products are first shipped to GOAT prior to shipment to Buyer, GOAT represents that its verification process aims to ensure that products are "authentic" and "as described." When a product does not ship directly from GOAT,

- 6 -

GOAT states that "[i]f your item is deemed inauthentic or does not match its listing, you will be covered under our Buyer Protection Policy [link]." The Buyer Protection Policy link directs to the webpage www.goat.com/buyer-protection-guarantee.

32. Defendant implemented its Buyer Protection Policy in 2019. Repeatedly emphasizing its aim to be the most trusted marketplace for sneakers, apparel, and accessories, Defendant states that "if a purchased item does not ultimately meet our standards, we can offer you support through our Buyer Protection Policy." The Buyer Protection Policy reflects Defendant's commitment to "providing help and assistance both prior to purchase and after."

33. Before GOAT was notified of the FTC investigation, the Buyer Protection Policy expressly stated that "[w]hether it's through GOAT Credit or a full refund, if something goes wrong with your order, we want to help fix it."

34. The Buyer Protection Policy also expressly stated: "Once your claim is submitted, a GOAT support specialist will follow up within one to two business days."

35. Following notice of the FTC investigation, in October 2022, Defendant changed the language to exclude the express refund language and its promise to respond within one to two business days, but the Buyer Protection Policy still states that "if something goes wrong with your order, we want to help fix it."

36. A link to the Buyer Protection Policy is displayed on the checkout page on the website and the app for all orders, including new, used, or final sale products.

37. On the GOAT "Purchases and Returns" webpage, which is linked on the checkout page, Defendant states:

> BUYER PROTECTION POLICY
> Our Buyer Protection Policy helps us to provide a safe, and positive, shopping experience for the entire GOAT community. Should a purchase not ultimately meet our quality standards, you are ensured support and protection through our Buyer Protection Policy [link].

38. The Buyer Protection Policy applies in four enumerated situations

("Deficient Product(s)").  It states:

> "The Buyer Protection Policy ensures coverage for you the buyer, in the event your item is:
>
> - received and deemed as inauthentic;
> - received, but is an incorrect item;
> - received, but does not match the item description or images;*
> - received, but is missing a key feature.**
>
> *Examples of items that do not match their description or photos include, but are not limited to, a pair of sneakers that arrive with scuffs that weren't described as such nor photographed in their listings, pants that arrive with a tear in the leg, sunglasses with incorrect lens color, etc.
>
> **Examples of missing features include, but are not limited to, a parka without its hood attached, a bag missing the detachable shoulder strap, sneakers without their insoles, a backpack missing a zipper, etc."

39. If a Buyer receives a Deficient Product, GOAT asks that the Buyer contact GOAT by submitting a request through the GOAT support page on the website or the GOAT Assist feature on the GOAT app.

40. In truth, Defendant does not treat such requests related to Deficient Products in accordance with its representation that the Buyer Protection Policy "ensures coverage."  Defendant has no system in place to identify or prioritize customer service requests related to Deficient Products.

41. The Buyer Protection Policy leads consumers reasonably to believe that they will not be stuck with Deficient Products.  But numerous consumers that request returns for Deficient Products have their requests rejected outright.

42. The Buyer Protection Policy states that all Deficient Products will be covered, regardless of GOAT's standard return policy.  The Buyer Protection Policy does not state that coverage and recourse are available only if products would otherwise be eligible for return.

43. Despite assurances that their purchases are covered by the Buyer Protection Policy, GOAT has rejected numerous consumers' requests for returns of

Deficient Products because, e.g., the items were "used" or the return request was not made within three days of delivery in accordance with GOAT's standard return policy.

44. Defendant's standard operating procedures for customer requests impose numerous obstacles to Buyers obtaining refunds when they receive Deficient Products.

45. Until at least August 2023, it was Defendant's policy to reject return requests for used or other final sale items, even if the Buyers reported that the items they received were Deficient Products. Despite the fact that the Buyer Protection Policy covered these items, GOAT offered no relief to Buyers who reported these issues.

46. In numerous instances, when consumers who received Deficient Products requested a return, GOAT agreed to accept the return but offered only to provide GOAT credit for the purchase price of the product, excluding shipping costs, rather than a refund.

47. To the extent that GOAT approves a return request for Deficient Products, Defendant's policy has been to not provide full relief to Buyers. Instead, GOAT offers credit that must be used on GOAT's website or app for the purchase price of the item. GOAT has not refunded such Buyers for shipping costs and has charged the Buyers the cost of shipping the returned item back to GOAT. As a result, if a Buyer was granted a return, GOAT provided the Buyer credit for $29 less than the Buyer paid for the product ($14.50 shipping each way).

48. Numerous consumers have complained that GOAT's customer service response time is unreasonably long. Consumers have asserted that GOAT takes days or weeks to address requests and inquiries, including requests to return Deficient Products. Because of these delays, GOAT holds hundreds and sometimes thousands of consumers' dollars for days or weeks longer than it should and in contrast to its representations.

49.   GOAT does not have a telephone line for customer service inquiries and requests.  GOAT also does not have a live chat function.  Rather, customer service is available only through a request form on the GOAT website.  Consumers submit the form and wait for an email response from GOAT.  All follow-up communications are via email.

50.   GOAT Assist on the GOAT app provides automated responses to address certain situations, including responding to ordinary requests for return (i.e., for new or non-"final sale" products made within a three-day window of product delivery).  However, if a consumer wants to request a return more than three days after delivery of the product, or if a consumer wants to request a return for a used or final sale product, the consumer must submit a request form on GOAT's website.  Consumers submit the form and must then wait for an email response from GOAT.  All follow-up communications are via email.

51.   If a consumer requests a return via GOAT Assist within the three-day window of product delivery, and is offered and agrees to complete an ordinary return and accept GOAT credit for the purchase price less return shipping via GOAT Assist's automated messaging, GOAT will automatically generate a return label.  Because GOAT does not differentiate between requests for ordinary returns and returns related to Deficient Products, numerous consumers who make requests for return of Deficient Products are offered ordinary returns, e.g., store credit only, through GOAT Assist.

52.   In numerous instances, consumers who sought return of Deficient Products were not given full refunds.  Despite the fact that these Deficient Products should have been covered under the Buyer Protection Policy, the Buyers were provided only store credit and charged the shipping costs for both delivery to them and return delivery to GOAT.

53.   Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendant is violating or is about to violate laws

enforced by the Commission, because, among other things:  Defendant continued its unlawful acts or practices despite knowledge of numerous complaints, and Defendant altered its unlawful policies or practices only after receiving a Civil Investigative Demand from the FTC.

## VIOLATIONS OF THE FTC ACT

54. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

55. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

56. Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

### Count I – Deceptive Representations

57. In connection with the advertising, promotion, offering for sale, or sale of products, Defendant has, through means described in Paragraphs 30-53, represented, directly or indirectly, expressly or by implication, that consumers will be given full relief if they receive Deficient Products.

58. In fact, in numerous instances in which Defendant has made the representations described in Paragraph 57, GOAT did not provide full relief to consumers who received Deficient Products.  In numerous instances, even though products were covered under GOAT's Buyer Protection Policy, GOAT denied consumers' requests for return or, if GOAT permitted consumers to return the products, GOAT provided store credit for less than the amount consumers paid.

59. Therefore, Defendant's representations as described in Paragraph 57 are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II – Unfairness

60. In numerous instances, Defendant has failed to implement customer service practices to protect consumers when those consumers have received Deficient Products, despite the assurances Defendant provided, as discussed in Paragraphs 30-53, including,

    a. denying consumers' requests to return Deficient Products;

    b. charging consumers shipping costs for receipt and return of Deficient Products;

    c. allowing returns and providing refunds only if the consumer persists in demanding a return and refund; and

    d. in instances where consumers persisted in demanding a return and refund, forcing consumers to submit multiple emails and engage with Defendant for several days or weeks before they were permitted to return products and receive refunds.

61. Defendant's acts or practices have caused or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

62. Therefore, Defendant's acts or practices, as described in Paragraph 60, constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF THE MAIL, INTERNET, OR TELEPHONE ORDER MERCHANDISE RULE

63. MITOR prohibits sellers from soliciting any order for the sale of merchandise ordered through the mail, via the Internet, or by telephone or facsimile transmission "unless, at the time of the solicitation, the seller has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer" either "[w]ithin that time clearly and conspicuously stated in any such solicitation; or [i]f no time is clearly and conspicuously stated, within thirty (30) days after receipt of a

properly completed order from the buyer." 16 C.F.R. § 435.2(a)(1).

64. "Receipt of a properly completed order" means the time at which a seller receives full or partial payment tendered in the proper amount and form, including authorization to charge an existing charge account, and an order "containing all of the information needed . . . to process and ship the order." 16 C.F.R. § 435.1(c).

65. "Shipment" means the act of physically placing the merchandise in the possession of a carrier. 16 C.F.R. § 435.1(e).

66. Where a seller is unable to ship merchandise within the time stated in the solicitation or, if no time is given, within 30 days, the seller must offer to the buyer "clearly and conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer's order and receive a prompt refund." 16 C.F.R. § 435.2(b)(1).

    a. Any such offer "shall be made within a reasonable time after the seller first becomes aware of its inability to ship," but in no event later than the time stated or within 30 days if no time is stated. 16 C.F.R. § 435.2(b)(1).

    b. The offer must "fully inform the buyer regarding the buyer's right to cancel the order and to obtain a prompt refund" and provide either a definite revised shipping date or, "where the seller lacks a reasonable basis for providing a definite revised shipping date[,] . . . inform the buyer that the seller is unable to make any representation regarding the length of delay." 16 C.F.R. § 435.2(b)(1)(i).

67. A seller must "deem an order cancelled and . . . make a prompt refund to the buyer whenever [t]he seller has notified the buyer of its inability to make shipment and has indicated its decision not to ship the merchandise" or whenever "[t]he seller fails to offer the option [to consent to a delay in shipping or cancel the order] and has not shipped the merchandise" within the time stated or within 30 days, if no time is given. 16 C.F.R. § 435.2(c)(4), (5).

68. Pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), and 16 C.F.R. Part 435.2, a violation of the Rule constitutes an unfair or deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count III – MITOR Violations

69. In numerous instances, when Defendant:
   a. represents that it will ship purchased products within the same day or next day, it does not have a reasonable basis to expect to ship the products within the timeframes it promises;
   b. fails to ship orders within the timeframe required by MITOR, it also fails to offer consumers the opportunity to consent to a delay in shipping or to cancel their order and receive a prompt refund;
   c. fails to ship orders within the timeframe required by MITOR and fails to offer consumers the opportunity to consent to a delay in shipping or to cancel their order, it does not cancel those orders or provide consumers a prompt refund.

70. Therefore, Defendant's acts and practices, as described in Paragraph 69, violate Section 435.2(a), (b), and (c) of the Rule, 16 C.F.R. § 435.2, and therefore are unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

71. Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendant's violations of the FTC Act and MITOR. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act and the Rule;

- 14 -

  B. Award monetary and other relief within the Court's power to grant;

  C. Award any additional relief as the Court determines to be just and proper.

Dated: December 2, 2024

              Respectfully submitted,

              _____
              Delilah Vinzon
              Matthew Fine

              Attorneys for Plaintiff
              FEDERAL TRADE COMMISSION